**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:24-cv-01255-DDD-RTG

MARK S. GOODBAN,

  Plaintiff,

v.

GREG DALY, in his official capacity as Chief of Police of the City of
Avon, Colorado; and
EAGLE COUNTY DISTRICT COURT, Chief Judge Paul Dunkelman,

  Defendants.

---

## ORDER GRANTING MOTION TO DISMISS

---

  Plaintiff Mark S. Goodban contends that the confiscation of his fire-arms under Colorado's "Extreme Risk Protection Order" statute,[1] is "based solely on unsupported allegations and hearsay" and violates his right to keep and bear arms under the Second Amendment to the U.S. Constitution. Doc. 95 at 12–13. The defense argues that the order is con-stitutional because it was issued only after judges reviewed evidence of a pattern of threatening behavior including a recent felony menacing case and Mr. Goodban's own stipulation that the court could find that he "poses a significant risk of personal injury to others" by possessing firearms. Docs. 105, 105-1 at 2. While it may be true that "red flag" laws like this one present opportunities for abuse, the Supreme Court has made it clear that the Second Amendment does not prevent disarma-ment where there has been a judicial determination that a particular

---

[1] Colo. Rev. Stat. § 13-14.5-101 *et seq.*

individual "likely would threaten or had threatened another with a weapon." *United States v. Rahimi*, 602 U.S. 680, 699 (2024). Since that is what happened here, Mr. Goodban's claims must be dismissed.

## LEGAL STANDARD

At the motion-to-dismiss stage, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotations and citation omitted). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal citation omitted); *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## BACKGROUND

### A. Procedural History

Mr. Goodban filed this Section 1983 action pro se on May 6, 2024. Doc. 1. He amended his complaint pro se on August 23, 2024, before counsel appeared on his behalf on December 3, 2024. Docs. 37, 63–64. Shortly after, Mr. Goodban voluntarily dismissed several defendants with prejudice and the remaining defendants moved to dismiss. Docs. 88, 44, 70. On April 22, 2025, I adopted Magistrate Judge Varholak's report and recommendation, granting all motions to dismiss. Doc. 93 (adopting Doc. 92 and granting Docs. 44, 70). As to Chief Daly, the order dismissed all claims against him in his individual capacity for monetary

damages with prejudice. Doc. 93. It also granted Mr. Goodban leave to amend the complaint for the sole purpose of bringing a claim for injunctive relief from the extreme risk protection order issued to him. *Id.*

On May 6, 2025, Mr. Goodban filed the operative Second Amended Complaint for Declaratory and Injunctive Relief against Chief Daly and Chief Judge Dunkelman in their official capacities as state and local officials responsible under Colorado law for petitioning and enforcing Colorado's Extreme Risk Protection Order statutory scheme, Colo. Rev. Stat. §§ 13-14.5-101 to 13-14.5-116, against Mr. "Goodban resulting in the ongoing and continuous confiscation of his firearms." Doc. 95 at 1.[2] Its sole count asserts two claims under 42 U.S.C. § 1983: (1) Colorado's Extreme Risk Protection Order statutory scheme is facially unconstitutional in violation of the Secondment Amendment of the United States Constitution because it "is unconstitutionally overbroad, and facially vague" and (2) the statutory scheme is unconstitutional as applied to Mr. Goodban. *Id.* ¶¶ 26–65. It seeks (1) a declaration that Colorado's Extreme Risk Protection Order "statutory scheme violates the Second and Fourteenth Amendments and is thus devoid of any legal force or effect"; (2) an injunction prohibiting Defendants and their employees and agents from (a) enforcing these statutes and (b) denying Mr. Goodban's right to possess or purchase firearms; and (3) an order mandating

---

[2] The pagination at the bottom of the document Mr. Goodban filed at Doc. 95 lists every page as page 12. Since that can't be so, these page references are to the page number listed by the court's system at the top of each page.

"Defendants and their employees and agents to immediately return[]
Mr. Goodban's firearms into his possession." *Id.* at 17–18.

## B. Factual Background

For the purposes of this order, I accept as true the factual allega-
tions—as opposed to any legal conclusions, bare assertions, or conclu-
sory allegations—that Mr. Goodban raises in his Second Amended Com-
plaint. *See Twombly*, 550 U.S. at 555 (internal citations omitted). I also
take judicial notice of the proceedings in the state court case incorpo-
rated by reference in the complaint and "central to [Mr. Goodban's]
claim"; no party "dispute[s] the documents' authenticity." *Gee v.
Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (courts may review "doc-
uments that the complaint incorporates by reference," "documents re-
ferred to in the complaint if the documents are central to the plaintiff's
claim and the parties do not dispute the documents' authenticity," and
"matters of which a court may take judicial notice" without converting
"the Rule 12(b)(6) motion to a motion for summary judgment" (internal
citations omitted)); *Barrett v. Pearson*, 355 F. App'x 113, 116 (10th Cir.
2009) (courts may "take judicial 'notice of judicial proceedings in other
courts if they have a direct relation to [the] matters at issue[.]'" (internal
citation omitted)).

Mr. Goodban owns a condominium in the Beaver Bench Condomin-
ium complex in Avon, Eagle County, Colorado. *Id.* ¶ 12. In 2020, Mr.
Goodban started having "significant problems" in his condominium
based on the homeowner's association's "failure to properly maintain the
common elements of the building within [its] control." *Id.* ¶ 13. Based on
their repeated failures, Mr. Goodban retained counsel and sent the as-
sociation demand letters seeking corrective action or Mr. Goodban would
bring a lawsuit to fix the issues. *Id.* ¶¶ 14–15. The association's members

notified Mr. Goodban multiple times "that they would make his life a living hell if he brought suit against" it." *Id.* ¶ 16.

On April 7, 2022, Mr. Goodban filed a lawsuit against the homeowner's association in Eagle County District Court. *Id.* ¶ 17. In response, he alleges, the homeowner's association coordinated with various local officials, including the Avon Police Department and Chief Daly, to start several retaliatory civil and criminal actions against Mr. Goodban for the next two and a half years. *Id.* ¶ 18. The first retaliatory act he alleges was Chief Daly's Petition and Affidavit for Temporary Extreme Risk Protection Order in Eagle County District Court filed on April 28, 2022—the day after Mr. Goodban served a Homeowner's association member with his lawsuit. *Id.*; Doc. 95-1. The Eagle County District Court issued a Temporary Extreme Risk Protection Order and then an Extreme Risk Protection Order. Doc. 95 ¶ 11. Chief Daly has continued petitioning for the renewal of the Extreme Risk Protection Order, which the Eagle County District Court has granted, continuing Mr. Goodban's deprivation of his firearms. *Id.* ¶¶ 2, 5, 10–11, 46; *see also* Doc. 105-1 (May 11, 2022 Extreme Risk Protection Order); Doc. 115-1 (May 19, 2025 Order for Renewal of Extreme Risk Protection Order); Doc. 106-1 (Register of Actions for Civil Case 2022CV000007).

## DISCUSSION

Mr. Goodban brings a single claim under 42 U.S.C. § 1983 alleging Colorado's Extreme Risk Protection Order statutory scheme is unconstitutional on its face because it is overbroad and vague, and as applied to

him because the relevant petitions lacked sufficient evidence.[3] Each Defendant moves to dismiss.

## I.    Chief Judge Dunkelman's Motion to Dismiss

Chief Judge Dunkelman's Rule 12(b)(1) motion argues the Court lacks subject matter jurisdiction over Mr. Goodban's claims against him for multiple reasons. Doc. 106. I agree.

### A.    Eleventh Amendment Sovereign Immunity

Chief Judge Dunkelman argues the Constitution's Eleventh Amendment sovereign immunity prohibits claims brought against him in his official capacity and seeking equitable relief. Doc. 106 at 5–10. Mr. Goodban contends the *Ex parte Young* exception to sovereign immunity applies: "an individual seeking only prospective injunctive relief for ongoing violations of federal law may bring suit against state officials in federal courts." Doc. 115 at 5–7 (internal citations omitted). He urges that in *New York State Rifle & Pistol Association, Inc., v. Bruen*, 597 U.S. 1 (2022), "the United States Supreme Court strongly implies (even though

---

[3] The Second Amended Complaint mentions a handful of other constitutional provisions: For example, it asserts the "statutory scheme purports to provide 'due process'" but "the process is in fact an unconstitutional sham." *Id.* ¶ 4. It avers Chief Daly filed and continues to maintain the extreme risk protection order as a "prohibited duplicative punishment"—violating the Fifth Amendment as applied to the states by the Fourteenth Amendment—"for previous non-firearm related crimes" for which Mr. Goodban was already sentenced and were subject to similar or identical punishment. *Id.* ¶¶ 56–57. It also alleges Mr. Goodban's homeowner's association, Chief Daly, and the Avon police department coordinated to retaliate against Mr. Goodban for his efforts to correct maintenance issues, potentially implicating the First Amendment. *Id.* ¶¶ 13–19, 23, 25. The complaint's sole count, however, does not expound on these purported issues and is clearly labeled: "Count One 42 U.S.C. 1983 Action for Depravation of Plaintiff's Rights under U.S. CONST. amends. II and XIV." *Id.* at 16. This order therefore does not address those other provisions.

it does not address the eleventh amendment jurisdictional question directly) by asserting its jurisdiction in that case that prospective and ongoing unconstitutional violations of the right to bear arms under the Second Amendment by state officials including state court judges concerning unconstitutional state laws are not fact barred by the 11th Amendment." Doc. 115 at 9.

The Supreme Court, however, recently clarified the *Ex parte Young* exception generally does not permit federal injunctive relief against state court judges:

> Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity. *See, e.g.*, *Alden v. Maine*, 527 U.S. 706, 713, 119 S. Ct. 2240, 144 L.Ed.2d 636 (1999). To be sure, in *Ex parte Young*, this Court recognized a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law. 209 U.S. 123, 159–160, 28 S. Ct. 441, 52 L.Ed. 714 (1908). But as *Ex parte Young* explained, this traditional exception *does not normally permit federal courts to issue injunctions against state-court judges* or clerks. Usually, those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties. If a state court errs in its rulings, too, the traditional remedy has been some form of appeal, including to this Court, not the entry of an ex ante injunction preventing the state court from hearing cases. As *Ex parte Young* put it, "an injunction against a state court" or its "machinery" "would be a violation of the whole scheme of our Government." *Id.*, at 163, 28 S. Ct. 441.

*Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (emphasis added); *see also Jackson v. Mason*, No. 24-3131, 2025 WL 2528310, at *3 (10th Cir. Sept. 3, 2025) (citing *Whole Woman's Health*, 595 U.S. at 39 and affirming that the *Ex parte Young* exception did not apply to injunctive relief plaintiff sought against a state-court judge and clerk); *Kirchner v. Marshall*, No. 1:22-cv-01512-CNS-MEH, 2023 WL 110953, at *3

(D. Colo. Jan. 5, 2023) ("Courts have repeatedly held that, under the Eleventh Amendment, state courts and state court judges are immune from claims asserted against them." (internal citations omitted)).

Colorado's statutory scheme contained in Colo. Rev. Stat. §§ 13-14.5-101 to 13-14.5-116 identifies a court's typical role of resolving the dispute between the petitioner and respondent such as addressing the evidence the court considers, the hearings the court must hold, and the orders the court may issue. It also specifies who may bring a petition for an extreme risk protection order and the list does not identify a court or judge: "a family or household member of the respondent, a community member, or a law enforcement officer or agency." Colo. Rev. Stat. §§ 13-14.5-103(1)(a), 13-14.5-104(1)(a). Indeed, Chief Daly's original petition attached to the Second Amended Complaint appears to be a standard form petition in which the petitioner must select a permissible petitioner category. Doc. 95-1 at 1. A judge then determines whether the petition meets the standards under the law, and if so, issues the order, a commonplace judicial activity.

To the extent Mr. Goodban's response claims "the Court in an [Extreme Risk Protection Order] proceeding acts as an enforcement officer, particularly in this case, ordering the deprivation of Mr. Goodban's second amendment rights," neither the Second Amended Complaint nor the statute support this. Issuing an order authorizing executive enforcement action is not itself an executive action, but a traditional judicial one. *Ex Parte Young* does not apply.

### B. Article III Controversy

Chief Judge Dunkelman also argues the Court lacks subject matter jurisdiction under Article III as to claims for declaratory relief against him "because there is no actual controversy between him and [Mr.] Goodban." Doc. 106 at 5, 10–12. Mr. Goodban refutes that because on

May 20, 2025—after the Second Amended Complaint was filed—Chief Judge Dunkleman granted the latest renewal petition and ordered the continued seizure of Mr. Goodban's guns for another year, there is a "**current** case and controversy as to whether such order is constitutional and whether the entire [Extreme Risk Protection Order] statutory scheme is in fact constitutional since it deprives Mr. Goodban of his second amendment rights." Doc. 115 at 11–12 (emphasis in original). Mr. Goodban's argument misses the mark.

Once again, the Supreme Court's recent *Whole Woman's Health* opinion resolves this particular issue:

> Article III of the Constitution affords federal courts the power to resolve only "actual controversies arising between **adverse** litigants." *Muskrat v. United States*, 219 U.S. 346, 361, 31 S. Ct. 250, 55 L.Ed. 246 (1911). Private parties who seek to bring S. B. 8 suits in state court may be litigants adverse to the petitioners. But the state-court clerks who docket those disputes and *the state-court judges who decide them generally are not*. Clerks serve to file cases as they arrive, not to participate as adversaries in those disputes. *Judges exist to resolve controversies* about a law's meaning or its conformance to the Federal and State Constitutions, *not to wage battle as contestants in the parties' litigation.*

595 U.S. at 39–40 (emphasis added). Again, state court judges' role under Colorado's Extreme Risk Protection Order statutory scheme is adjudicatory; the judges are not adverse to the respondents. *See supra* § I.A. As the Supreme Court explained in *Whole Woman's Health*, it has long maintained that "no case or controversy" exists "between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." 595 U.S. at 40 (quoting *Pulliam v. Allen*, 466 U.S. 522, 538, n.18 (1984)).

For either reason, Chief Judge Dunkelman's motion must be granted.

## II.    Chief Daly's Motion to Dismiss

"The Second Amendment protects 'an individual right to keep and bear arms.'" *United States v. Ogilvie*, 153 F.4th 1098, 1102 (10th Cir. 2025) (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 595 (2008)). The Supreme Court has cautioned, however, that "the right secured by the Second Amendment is not unlimited," and "[i]s not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. But "[o]nly if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individuals conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 597 U.S. at 17.

Mr. Goodban argues that Colorado's Extreme Risk Protection Order laws violate the Second Amendment both on their face and as applied to him. Doc. 95 at 7, 13. Chief Daly moves to dismiss Mr. Goodban's as-applied constitutional challenge under Rule 12(b)(1) and his facial challenge under Rule 12(b)(6). Doc. 105.

### A. What Is and Is Not at Issue

To begin, it is necessary to clear up some confusion evident in both parties' filings about what has already been resolved and what is still at issue.[4] Mr. Goodban's response to this motion misconstrues prior events in this case and what is currently at issue. He erroneously asserts (1) "the Magistrate [Judge] determined that injunctive relief was sufficient to survive the pleading stage as alleged"; (2) "[t]he District Court has already determined Mr. Goodban properly alleged the unconstitutionality of the EPRO statutory scheme facially and as applied to him;" (3)

---

[4] As noted above, to the extent the Second Amended Complaint references other potential claims under the Due Process, Double Jeopardy, or Free Speech Clauses, they have not been presented sufficiently for adjudication. *See supra* n.3.

Chief Daly did not timely object to Judge Varholak's report and recommendation and thus waived further objection; (4) "the prior District Court order" already "rejected" Chief Daly's *Rooker-Feldman* arguments. Doc. 111 at 2, 4. To clarify, Judge Varholak's report and recommendation regarding the prior motions to dismiss:

(1) Found Chief Daly was entitled to qualified immunity on Mr. Goodban's claims and thus did "*not* address Defendant Daly's remaining arguments in support of dismissal." Doc. 92 at 12, 14, 14 n.14 (emphasis added);

(2) Recommended granting Chief Daly's motion and dismissing with prejudice the claims against him in his individual capacity for monetary damages. *Id.* at 15;

(3) Acknowledged it "does *not* address whether Plaintiff has a potential claim for injunctive relief from the [extreme risk protection order] issued to Plaintiff (as opposed to injunctive relief from the criminal proceedings levied against him)." *Id.* at 4 n.5 (emphasis added); and

(4) Recommended granting Mr. Goodban "leave to amend the Complaint for the sole purpose of bringing a claim for injunctive relief from the [extreme risk protection order] issued to Plaintiff, should Plaintiff choose to pursue such a claim," explaining "[i]f such a claim is clearly articulated, the parties will be able to better address the validity of such a claim in their briefing and the Court will be better able to analyze the validity of such a claim." *Id.* (emphasis added).

No party filed objections and I adopted the report and recommendation, dismissing the recommended claims and granting the recommended leave. Doc. 93. Setting aside qualified immunity, no

recommendation or ruling addressed Chief Daly's other arguments or the validity of an injunctive relief claim. Docs. 92–93. Objections to those issues were not ripe and thus not waived.

At times, Chief Daly's briefing confuses the scope of the Second Amended Complaint. The complaint focuses on Chief Daly's Petition and Affidavit for Temporary Extreme Risk Protection Order but cites all the Extreme Risk Protection Order statute's sections and references subsequent petitions and orders applied to Mr. Goodban. Docs. 95, 95-1. Chief Daly's motion solely addresses § 13-14.5-103, which governs temporary extreme risk protection orders. Doc. 105. His reply appropriately addresses the broader statutory scheme, concluding "C.R.S. § 13-14.5-101, *et. seq* is constitutional both on its face and as applied to Plaintiff." Doc. 116 at 6. I thus construe his arguments to address the statutory scheme in full, not just § 13-14.5-103.

### B. Colorado's Statutory Scheme

An extreme risk protection order under Colorado law prohibits individuals from "hav[ing] in [thei]r custody or control a firearm or purchase, possess, receive, or attempt to purchase or receive a firearm while this order is in effect" and requires the "immediate[] surrender" of all firearms and concealed carry permit." Colo. Rev. Stat. § 13-14.5-103(6)(g); Colo. Rev. Stat. § 13-14.5-105(9)(f). "A family or household member of the respondent, a community member, or a law enforcement officer or agency" can petition for a temporary extreme risk protection order valid for up to fourteen days or for a 364-day extreme risk protection order. Colo. Rev. Stat. §§ 13-14.5-103(1)(a), 13-14.5-103(5), 13-14.5-104(1)(a), 13-14.5-105(1), 13-14.5-105(2). The same category of petitioners may move to renew a 364-day extreme risk protection order; the renewal order may not exceed one year. Colo. Rev. Stat. §§ 13-14.5-107(2)(b), 13-14.5-107(2)(e). A temporary order can be withdrawn and

the respondent can request termination of the longer orders. Colo. Rev. Stat. §§ 13-14.5-103(5)(b), 13-14.5-105(10), 13-14.5-107(1).

Courts "may consider any relevant evidence" in determining whether grounds exist for either type of order.[5] Colo. Rev. Stat. §§ 13-14.5-103(3), 13-14.5-105(2), 13-14.5-105(3). To issue a temporary order, the court must hold a hearing and "find[] by a preponderance of the evidence . . . the respondent poses a significant risk of causing personal injury to self or others in the near future by having in the respondent's custody or control a firearm or by purchasing, possessing, or receiving a firearm." Colo. Rev. Stat. § 13-14.5-103(3), (4). An extreme risk protection order and a renewal of such order require a hearing and "find[ing] by clear and convincing evidence . . . that the respondent poses a significant risk of causing personal injury to self or others by having in the respondent's

_____

[5] The statute includes the following examples of "relevant evidence": "(a) A recent act or credible threat of violence by the respondent against self or others, whether or not such violence or credible threat of violence involves a firearm; (b) A pattern of acts or credible threats of violence by the respondent within the past year, including but not limited to acts or credible threats of violence by the respondent against self or others; (c) A violation by the respondent of a civil protection order . . .; (d) A previous or existing extreme risk protection order issued against the respondent and a violation of a previous or existing extreme risk protection order; (e) A conviction of the respondent for a crime that included an underlying factual basis of domestic violence . . .; (f) The respondent's ownership, access to, or intent to possess a firearm; (g) A credible threat of or the unlawful or reckless use of a firearm by the respondent; (h) The history of use, attempted use, or threatened use of unlawful physical force by the respondent against another person, or the respondent's history of stalking another person. . . ; (i) Any prior arrest of the respondent for a crime listed in section 24-4.1-302(1) or section 18-9-202; (j) Evidence of the respondent's abuse of controlled substances or alcohol; (k) Whether the respondent is required to possess, carry, or use a firearm as a condition of the respondent's current employment; and (l) Evidence of recent acquisition of a firearm or ammunition by the respondent." Colo. Rev. Stat. § 13-14.5-105(3).

custody or control a firearm or by purchasing, possessing, or receiving a firearm."[6] Colo. Rev. Stat. §§ 13-14.5-105(2), 13-14.5-105(7)(e).

## C. Facial Challenge

The Second Amended Complaint alleges Colorado's Extreme Risk Protection Order statutory scheme is facially unconstitutional under "the Second Amendment, which applies to Defendants by operation of the Fourteenth Amendment." Doc. 95 ¶¶ 5, 25–44, 65.

Chief Daly argues the statute is facially constitutional under *Rahimi*. Doc. 105. Mr. Goodban's response to this argument is, as Chief Daly notes, sparse at best. *See generally* Doc. 111. The bulk of it (one paragraph) claims that in adopting the Magistrate Judge's report and recommendation that he be allowed to assert this claim in another amended complaint, the Court made a binding determination that this claim had merit. *Id.* at 4–5. As explained above, however, that is incorrect and the matter is now properly presented for decision. *See supra* § II.A. The remainder of Mr. Goodban's response regarding his facial challenge is one sentence pointing to his prior briefing. *Id.* at 5 (citing Doc. 83). Chief Daly is right that normally such cross referencing is not allowed, but there is no prejudice here because Chief Daly responded to that brief (which also largely consists of the same arguments—often verbatim—repeated in the Second Amended Complaint),[7] and the result is the same either way. In the interest of efficiently resolving this dispute,

---

[6] "[I]f, after notice, the motion for renewal is uncontested and the petitioner seeks no modification of the order, the order may be renewed on the basis of the petitioner's motion or affidavit, signed under oath and penalty of perjury, stating that there has been no material change in relevant circumstances since the entry of the order and stating the reason for the requested renewal." Colo. Rev. Stat. § 13-14.5-105(7)(e).

[7] *Compare* Doc. 83 at 5–10, *with* Doc. 95.

I will consider Mr. Goodban's arguments regarding the facial challenge in his original response.

Mr. Goodban argues Colorado's law is unconstitutional because it (1) "enables **anybody** to institute what can only be described as an intrusive judge led inquisition into protected Second Amendment conduct"; (2) does not require a prior criminal complaint or "an allegation of criminal conduct involving a firearm"; (3) the petitioner's affidavit for the 364-day order must "give rise to a ***reasonable fear of future dangerous acts*** by the respondent"; (4) "a Court may consider essentially 'unlimited' evidence and conduct" with "no time limit on the conduct" it can consider, including a person's "mere 'intent' to use a firearm and "a person's entire lifetime of alcohol or controlled substance consumption" and firearm usage; and (5) permits consideration of a "recent act or credible threat of violence" without limiting how "recent" the conduct must be or the "type of 'threat of violence'" sufficient. Doc. 83 at 5–10 (emphasis in original); Doc. 95 ¶¶ 28–30, 34–36, 38–39, 42–43 (emphasis in original). To the extent these allegations over- or mis-state the statute's text, the statute's language governs. *Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal conclusion couched as a factual allegations"); *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

The Supreme Court has also warned in this context that a facial challenge "is the 'most difficult challenge to mount successfully.'" *Rahimi*, 602 U.S. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see also Willey v. Brown*, No. CV 23-2299-BAH, 2024 WL 3557937, at *18 (D. Md. July 25, 2024) (collecting unsuccessful post-*Bruen* challenges to extreme risk protection order laws). To prevail on a facial challenge, the Second Amended Complaint must "establish that

no set of circumstances exists under which the [statute] would be valid." *Rahimi*, 602 U.S. at 693 (internal citation omitted). Chief Daly "need only demonstrate that [the statute] is constitutional in some of its applications." *Id.*

Under that standard, Mr. Goodban's facial challenge is doomed. The statute is constitutional as applied to the facts alleged in his own case. "*Rahimi* allows a court to disarm a 'threatening individual' if it makes a judicial determination that the 'individual poses a clear threat of physical violence to another.'" *United States v. Gordon,* 137 F.4th 1153, 1156 (10th Cir. 2025) (quoting 602 U.S. at 698). Colorado's statute does just that. For instance, Chief Daly's April 28, 2022 petition for a temporary extreme risk protection order cited, among other things, Mr. Goodban's April 4 plea of guilty to "Felony Menacing-Real/Simulated Weapon (Primary), Harassment, Reckless Driving , and Careless Driving." Doc. 95-1 at 3. The offense involved a "road rage incident" during which Mr. Goodban "brandish[ed] a knife" and threatened, "Quit following me or you will see what the consequences will be." *Id.* This is "[a] recent act or credible threat of violence by the respondent against self or others, whether or not such violence or credible threat of violence involves a firearm" under Colo. Rev. Stat. § 13-14.5-105(3). It supports a judicial "find[ing] by a preponderance of the evidence that . . . the respondent poses a significant risk of causing personal injury to self or others in the near future by having in the respondent's custody or control a fire-arm or by purchasing, possessing, or receiving a firearm." Colo. Rev. Stat. § 13-14.5-103(3). Yet another example, Mr. Goodban stipulated to the May 2022 Extreme Risk Protection Order and did "not dispute that [the state] court can find by clear and convincing evidence, based on the evidence the Petitioner could present as set forth in the Petition, that the Respondent poses a significant risk of causing personal injury to others

by having in his or her custody or control a firearm or by purchasing, possessing, or receiving a firearm." Doc. 105-1 at 2.

In *Rahimi* the Supreme Court held that the "prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent." *Rahimi*, 602 U.S. at 698. There is no dispute that for an extreme risk protection order to issue under Colorado law, a court has to find that possession of weapons by the subject of the order presents a threat to others. Colo. Rev. Stat. §§ 13-14.5-103(3), 13-14.5-105(2). That is enough to reject the facial challenge. *Ogilvie*, 153 F.4th at 1111–12 (Tymkovich, J., concurring).

Mr. Goodban attempts to get around that outcome by importing overbreadth and vagueness concepts into this area of law. Doc. 95 ¶¶ 25, 32, 34; Doc. 83 at 6–8. While I leave open the possibility that those doctrines might have some role to play in Second Amendment jurisprudence,[8] at least in this case it makes more sense to apply the very recent, and very on-point, Second Amendment caselaw since, virtually by definition any law that is unconstitutionally overbroad or vague would also not be consistent with the nation's traditions and history of firearm regulation.

As the Tenth Circuit recently explained, the two-step framework the Supreme Court established in *Bruen* "for reviewing the constitutionality of firearm regulations" remains in place:

> At step one, the party challenging the regulation must show that the plain text of the Second Amendment covers the regulated conduct. *Id.* at 24, 142 S. Ct. 2111. If the party meets this burden, then the Second Amendment "presumptively protects that conduct." *Id.* At step two, the

---

[8] I note that neither the Supreme Court in *Rahimi* nor the Tenth Circuit in *Ogilvie* or other cases applying *Bruen* and *Rahimi* has suggested that it is necessary, or appropriate, to apply those doctrines in this context.

burden shifts to the government to justify how its regula-
tion of that conduct falls outside the scope of the Second
Amendment's protected right. *Id.* The government meets
this burden if it can "demonstrate that the regulation is
consistent with this Nation's historical tradition of firearm
regulation." *Id.* at 17, 142 S. Ct. 2111.

*Ogilvie*, 153 F.4th at 1103 (citing *Bruen*, 597 U.S. 1).

Here, there is no dispute that the regulation implicates the Second
Amendment. The focus is step two. Chief Daly argues that the statute
"has a legitimate basis in the history, tradition, and custom of weapon
regulation from the time of ratification." Doc. 105 at 104–07; Doc. 116 at
4–5. Mr. Goodban rebuts "[t]here is no historical analogy for this statu-
tory scheme." Doc. 83 at 5–10. The Supreme Court has reiterated step
two is met "by 'identify[ing] a well-established and representative his-
torical *analogue*[.]" *Ogilvie*, 153 F.4th at 1105 (emphasis in original)
(quoting *Bruen*, 597 U.S. at 30)). Mr. Goodban argues that "[t]here is no
historical analogy for this statutory scheme," Doc. 83 at 5–10, but the
analysis in *Rahimi* shows otherwise.

In *Rahimi*, the Supreme Court addressed 18 U.S.C. § 922(g)(8),
which "bars an individual from possessing a firearm if his restraining
order includes a finding that he poses 'a credible threat to the physical
safety' of a protected person" or "prohibits the use, attempted use, or
threatened use of physical force." *Id.* at 693. The Court explained that
"[f]rom the earliest days of the common law, firearm regulations have
included provisions barring people from misusing weapons to harm or
menace others." *Rahimi*, 602 U.S. at 693. Surety laws were "invoked to
prevent all forms of violence" and "targeted the misuse of firearms":

In 1795, for example, Massachusetts enacted a law author-
izing justices of the peace to "arrest" all who "go armed of-
fensively [and] require of the offender to find sureties for
his keeping the peace." . . . Later, Massachusetts amended
its surety laws to be even more specific, authorizing the

- 18 -

> imposition of bonds from individuals "[who went] armed
> with a dirk, dagger, sword, pistol, or other offensive and
> dangerous weapon." . . . At least nine other jurisdictions did
> the same. *See Bruen*, 597 U.S., at 56, and n.23.

*Id.* at 695–96 (internal citations omitted). Relatedly, "going armed laws"
punished individuals "who had menaced others with firearms" by "for-
feiture of the arms . . . and imprisonment." *Id.* at 697 (internal citation
omitted). They "prohibited 'riding or going armed, with dangerous or un-
usual weapons, [to] terrify[ ]the good people of the land'" because the
"conduct disrupted the 'public order' and 'le[d] almost necessarily to ac-
tual violence.'" *Id.* (internal citations omitted). As the Supreme Court
determined, "the surety and going armed laws confirm what common
sense suggests: When an individual poses a clear threat of physical vio-
lence to another, the threatening individual may be disarmed." *Id.* at
698.

Colorado's Extreme Risk Protection Order statutory scheme is not
"identical to these founding era regimes, but it does not need to be." *Id.*
(citing *Bruen*, 597 U.S., at 30); *Ogilvie*, 153 F.4th at 1108 ("*Bruen* in-
structs us to identify a historical *analogue*, not a historical *twin*.'" (em-
phasis in original) (quoting 597 U.S. at 30)). "Its prohibition on the pos-
session of firearms by those found by a court to present a threat to others
fits neatly within the tradition the surety and going armed laws repre-
sent." *Rahimi*, 602 U.S. at 698. Like the going armed and surety laws,
Colorado's law "applies to individuals found to threaten the physical
safety of another" and "restricts gun use to mitigate demonstrated
threats of physical violence." *Id.* (internal citations omitted). "[W]hen a
challenged regulation does not precisely match its historical precursors,
'it still may be analogous enough to pass constitutional muster.'"
*Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 30). "The law must
comport with the principles underlying the Second Amendment, but it

need not be a 'dead ringer' or a 'historical twin.'" *Id.* Courts "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit[.]" *Ogilvie*, 153 F.4th at 1105 (quoting *Rahimi*, 602 U.S. at 692). This requires comparing "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* (quoting *Bruen*, 597 U.S. at 29). The modern regulation and its historical precursor must "impose comparable burdens on the Second Amendment right" and "have comparable justifications for burdening the Second Amendment right." *Id.* at 1105–06 (citing *Bruen*, 597 U.S. at 29).

Mr. Goodban's complaint about the breadth of the range of people who can petition for an order under Colorado's law perhaps distinguishes it from the statute at issue in *Rahimi*, but not from the historical laws the Court relied on there. Indeed, the surety laws allowed "any person having reasonable cause to fear" that the accused would do him harm or breach the peace" to make a complaint to "a judge or justice of the peace." 602 U.S. at 696. This is broader than the specific individuals permitted to bring petitions under Colorado's law: "a family or household member of the respondent, a community member, or a law enforcement officer or agency." Colo. Rev. Stat. §§ 13-14.5-103(1)(a), 13-14.5-104(1)(a).

Orders under Colorado's statutory scheme are also "like surety bonds[,] of limited duration." *Rahimi*, 602 U.S. at 699. A temporary extreme risk protection order applies for up to 14 days. Colo. Rev. Stat. § 13-14.5-103(5). An extreme risk protection order has a period of 364 days. Colo. Rev. Stat. § 13-14.5-105(2). A renewed extreme risk protection order cannot exceed one year. Colo. Rev. Stat. § 13-14.5-107(2)(e). These time periods are shorter than that upheld in *Rahimi*. 602 U.S. at 699 ("Section 922(g)(8) only prohibits firearm possession so long as the

- 20 -

defendant 'is' subject to a restraining order. . . In Rahimi's case that is one to two years after his release from prison . . . ."). As for penalty, like Section 922(g)(8), Colorado's "lesser restriction of temporary disarmament" is permissible because the "going armed laws provided for imprisonment." *Id.* at 699.

The going armed and surety laws also "involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Id.* at 699. Colorado's law requires a similar individualized judicial assessment with similar standards. To issue a temporary order, the court must "find[] by a preponderance of the evidence that . . . the respondent poses a *significant risk* of causing personal injury to self or others *in the near future* by having in the respondent's custody or control a firearm or by purchasing, possessing, or receiving a firearm." Colo. Rev. Stat. § 13-14.5-103(3) (emphasis added). An extreme risk protection order and its renewal have a more stringent standard corresponding to the longer time period: the court must "find[] by *clear and convincing evidence* . . . that the respondent poses a *significant risk* of causing personal injury to self or others by having in the respondent's custody or control a firearm or by purchasing, possessing, or receiving a firearm." Colo. Rev. Stat. § 13-14.5-105(2) (emphasis added). Contrary to Mr. Goodban's contention that the law sweeps in long-past dangers, the plain language of the statute requires that the risk be current ("respondent *poses* a significant threat"). Likewise, any potential vagueness about the "reasonable fear of future dangerous acts" is indistinguishable from the standards the *Rahimi* majority relied on and upheld. *Compare* Doc. 95 ¶ 34 *and* Doc. 83 at 8, *with Rahimi*, 602 U.S. at 695, 699 (surety laws "authorized magistrate to require individuals suspected of future misbehavior to post a bond"; "Section 922(g)(8) applies only once a court has found that the defendant 'represents a credible threat to the physical safety' of another."). Colorado's

procedural requirements are also similar, and in some ways stronger. Under surety laws, "[t]he magistrate would take evidence, and—if he determined that cause existed for the charge—summon the accused, who could respond to the allegations." 602 U.S. at 696–97. Colorado's law allows the entry of a temporary extreme risk protection order without notifying the respondent, but within fourteen days it must be scheduled for a hearing to determine whether the "three-hundred-sixty-four-day extreme risk protection order should be issued," the notice of which must be served on the respondent, and the order expires on the date of that hearing. Colo. Rev. Stat. § 13-14.5-103(1)(a), (5). It identifies several requirements a petition for an extreme risk protection order must include and requires the Court to appoint counsel to represent the respondent when such a petition is filed and notify the respondent of the hearing on the petition. Colo. Rev. Stat. § 13-14.5-104(1)(a), (3). Colorado's law allows courts to consider "relevant" evidence—which Colorado's rules of evidence define—and provides nonexhaustive examples of relevant evidence courts may consider. Colo. Rev. Stat. §§ 13-14.5-103(3), 13-14.5-105(2), 13-14.5-105(3); Colo. R. Evid. 401 (Definition of "Relevant Evidence").

Colorado's statutory scheme also requires courts to hold hearings before issuing the orders and the hearings must be swiftly set. Colo. Rev. Stat. § 13-14.5-103(4) ("The court shall hold a temporary extreme risk protection order hearing . . . on the day the petition is filed or on the court day immediately following the day the petition is filed."); Colo. Rev. Stat. § 13-14.5-105(1)(4) ("The court must provide the notice of the hearing [to the respondent] no later than one court day after the date of the extreme risk protection order petition."); Colo. Rev. Stat. § 13-14.5-107(2)(c) ("Upon receipt of the motion to renew, the court shall order that a hearing be held not later than fourteen days after the filing of the motion to renew."). A respondent can challenge the court's findings by

requesting the termination of an extreme risk protection order as well as appealing such an order and its renewal. Colo. Rev. Stat. § 13-14.5-107(1); Doc. 95 ¶ 37 (acknowledging an extreme risk protection order is appealable); *Denver Police Dep't v. Shelby*, No. 22CA1564, 2023 WL 12051977, at *2 (Colo. App. May 25, 2023) (appeal of renewal order); *Hemmings v. Fox*, No. 20CA0536, 2020 WL 14047901, at *5 (Colo. App. Nov. 5, 2020) (appeal of 364-day order); *Bergstrom v. Kinney*, No. 21CA0901, 2022 WL 22925057, at *4 (Colo. App. Mar. 24, 2022) (same).

It is true, as Mr. Goodban argues, that a law that allows for preemptively restricting a citizen's constitutional right must be viewed with caution. And, as the Supreme Court itself noted, the very historical precedents it relied on in *Rahimi* show that such laws could be used for repressive, unconstitutional purposes. *See* 602 U.S. at 694 ("English law had disarmed not only brigands and highwaymen but also political opponents and disfavored religious groups."); *see also id*. at 776 (Thomas, J., dissenting) ("[O]ne can easily imagine a world where political minorities or those with disfavored cultural views are deemed the next 'dangers' to society."). But the Supreme Court's ultimate conclusion in *Rahimi* forecloses a facial challenge to Colorado's Extreme Risk Protection Order statutory scheme. *See Ogilvie*, 153 F.4th at 1103.

### D. As-Applied Challenge

To the extent Mr. Goodban's as-applied challenge is not based on the same arguments that underly his facial challenge (and thus must be rejected for the same reasons), it appears almost entirely to be an effort to argue that the Colorado courts have been mistaken in finding that he poses a threat if armed. *See, e.g.*, Doc. 95 ¶ 5 ("The [Extreme Risk Protection Order] order that remains in effect to the present should be vacated"), ¶ 11 (Chief Judge Dunkelman "is named as a Defendant in its official capacity for the purposes of vacating . . . ."), ¶ 20 ("[T]here were

no factual grounds whatsoever contained in the [extreme risk protection order] application that justified the issuance of a temporary [extreme risk protection order] by preponderance of the evidence pursuant to C.R.S. § 13-14.5-1031 let alone the clear and convincing evidentiary standard required pursuant to C.R.S. § 13-14.5-105(2) to issue an [extreme risk protection order] for a year as occurred here."), ¶ 46 ("There was no sufficient factual basis on the face of Detective Daly's original (and renewed) applications for the issuance of the [order].").

The *Rooker-Feldman* doctrine occupies "narrow ground." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It bars "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* The doctrine does not bar a federal action challenging a statute governing a state-court decision "so long as the state court did not address it and the plaintiff does not request the federal court to upset the state court judgment." *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006) (internal citations omitted). Therefore, *Rooker-Feldman* "bars review of the correctness of the Colorado courts' orders or whether those courts unconstitutionally applied the challenged state statutes and rules when issuing and extending" an order. *Drexler v. Weiser*, No. 1:21-cv-00805-DDD-KAS, 2025 WL 1279116, at *6 (D. Colo. Mar. 31, 2025) (citing *Drexler v. Spahn*, No. 21-1368, 2022 WL 17333076, at *4 (10th Cir. Nov. 30, 2022)); *see also Eisenhart v. Eagle Cnty. Sheriff's Off.*, No. 23-1275, 2024 WL 3594357, at *3 (10th Cir. July 31, 2024) (holding *Rooker-Feldman* bars claim challenging constitutionality of state rules "as applied" by state court because the challenge "complain[s] of injuries caused by state-court judgments," "[t]he federal district court 'could not have granted relief without reexamining the state-court judgments.' . . . [a]nd finding

the state court unconstitutionally applied the Colorado Rules would require the district court to 'modify or set aside [the] state-court judgment.'" (internal citations omitted)). The doctrine does not bar federal courts from claims challenging statutes as "unconstitutional either facially or as applied *prospectively* to the category of conduct [the plaintiff] wishes to engage in going forward." *Drexler*, 2025 WL 1279116, at *6 (emphasis added).

The extreme risk protection orders entered against Mr. Goodban are state court judgments that are appealable, which the Second Amended Complaint appears to concede. Doc. 95 ¶ 37 ("The respondent is then left bearing the burden of proving the judge abused his discretion on appeal after his firearms have already been confiscated."); *see also Hemmings*, 2020 WL 14047901, at *5 (appeal of initial extreme risk protection order); *Bergstrom*, 2022 WL 22925057, at *4 (same); *Denver Police Dep't*, 2023 WL 12051977, at *2 (appeal of renewal of extreme risk protection order). After the state court entered the initial May 11, 2022 Extreme Risk Protection Order against Mr. Goodban, it closed the case and deemed it "Post Judgment."[9] Doc. 106-1 at 3–4 (Register of Actions for state court case). It entered renewal orders in April 2023 and April 2024 before Mr. Goodban initiated this action on May 6, 2024. Doc. 106-1 at 6, 10. Thus the judgments Mr. Goodban challenges were entered before he filed his action.

His as-applied challenge therefore "complain[s] of injuries caused by state-court judgments," requires "reexamining the state-court judgments," and seeks "modify[ing] or set[ting] aside [the] state-court judgment." *Eisenhart*, 2024 WL 3594357, at *3. Mr. Goodban asks this court to "review of the correctness of the Colorado courts' orders or whether

---

[9] Mr. Goodban's stipulation to this order further moots any challenge to it and the underlying petition. Doc. 105-1 at 2.

those courts unconstitutionally applied the challenged state statutes and rules" and therefore it sits squarely within the narrow ground covered by the *Rooker-Feldman* doctrine.[10] *Drexler*, 2025 WL 1279116, at *6.

To the extent the Second Amended Complaint could be interpreted to challenge the prospective application of the statute to Mr. Goodban, these allegations are either restatements of his facial arguments or conclusory. *See, e.g.*, Doc. 95 ¶ 57 ("Chief Daly filed and continues to maintain the [extreme risk protection order] as a duplicative punishment for previous non-firearm related crimes . . . ."). It does not allege any facts to show the continued renewal of the orders (*i.e.*, prospective application) against Mr. Goodban is unconstitutional. *Id.*

## CONCLUSION

It is **ORDERED** that:

Defendant Eagle County District Court Chief Judge Paul Dunkelman's Motion to Dismiss Under F.R.C.P. 12(b)(1), **Doc. 106**, is **GRANTED**;

Defendant Chief Greg Daly's Motion to Dismiss, **Doc. 105**, is **GRANTED**; and

The Second Amended Complaint, Doc. 95, is **DISMISSED WITHOUT PREJUDICE**.

---

[10] Yet another bar, issue preclusion prohibits "a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Res. Ltd. Liab. v. U.S. Dep't Of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (citing *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000)).

DATED: February 4, 2026              BY THE COURT:

Daniel D. Domenico
United States District Judge